UNITED STATES DISTRICT COURT
                  FOR THE DISTRICT OF MASSACHUSETTS

~~~
THOMAS ROSA, JR.,                    )
     Petitioner,                     )
                                     )
     v.                              )    C.A. No. 04-10174-NG
                                     )
MICHAEL T. MALONEY,                  )
     Respondent.                     )
~~~
GERTNER, D.J.:

         **MEMORANDUM AND ORDER RE: PETITIONER'S PETITION FOR
          WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. § 2254**
                          October 17, 2005

   Thomas Rosa, Jr., ("Rosa") brings this petition under 28 U.S.C. § 2254, seeking a writ of habeas corpus setting aside his conviction in Massachusetts state court for murder in the first degree and kidnaping. Like a growing number of habeas actions, Rosa's petition raises important issues concerning post-conviction DNA testing. While recent case law underscores finality in criminal prosecutions, see, e.g., Brackett v. United States, 270 F.3d 60, 67 (1st Cir. 2001) (a "strong concern for finality" is embodied in § 2254), jurists cannot ignore the ways in which technological advances offer the chance to test the reliability of convictions, sometimes years after their entry. Thus new technologies are occasionally forcing finality to defer to a competing criminal justice priority – accuracy.

   In striking the proper balance between finality and accuracy, we undertake the difficult task of juxtaposing pre-DNA precedent atop post-DNA technology – How are statutory deadlines and their narrow exceptions to be interpreted? What is an

updated meaning of exculpatory evidence?  What is the scope of the obligation to preserve evidence?  See, e.g., Developments In The Law, Confronting The New Challenges of Scientific Evidence: DNA Evidence, 108 Harv. L. Rev. 1557 (1995).

But not all DNA-related claims are alike.  In one variety of claims, DNA testing, even assuming a favorable outcome for the petitioner, would not cast doubt on the original conviction.  In the instant case, one DNA non-match – the victim turned out not to be the source of a small stain on Rosa's coat – could hardly have affected the verdict:  The coat was not at all essential to the conviction, although it did play a small role in the prosecution's case; there were three eyewitnesses, some of whom did not describe the perpetrator as wearing the coat at the time of the offense; and the coat's relationship to the crime had been the subject of vigorous cross-examination at trial.  Rightly so, the SJC found that the evidence concerning the stain was "of marginal – if any – significance." Commonwealth v. Rosa, Memorandum of Decision and Order Denying Petition for Leave to Appeal, Supreme Judicial Court for Suffolk County, No. SJ-2003-0087, October 17, 2003.

A second variety of DNA-related claims, also presented in the instant case, is more troubling, but again not at all outcome determinative.  Before Rosa was convicted, and surely before DNA testing could be conducted, prosecutors lost two blood-stained

items of clothing worn by the victim on the night she was attacked. There is no indication of bad faith; indeed, the absence of the evidence could have undermined their own case. As the SJC noted, it is "overwhelmingly likely that the blood stains came from the victim herself, not from the perpetrator." <u>Commonwealth v. Rosa</u>, Memorandum of Decision and Order Denying Petition for Leave to Appeal, Supreme Judicial Court for Suffolk County, No. SJ-2003-0087, October 17, 2003. Nevertheless, the evidence is lost, and Rosa's opportunity to test it for exonerating value is irreversibly gone.

Thus neither of Rosa's DNA-related habeas claims are viable challenges to the validity of his conviction – one does not carry the persuasion of exoneration, and the other is a mere hypothetical about what DNA testing would show if it could be performed. Accordingly, and for the reasons set forth below, Rosa's habeas petition [document #1] is **DENIED**.

I.   <u>BACKGROUND</u>

   A.   <u>State Court</u>

On February 11, 1986, a Suffolk County grand jury returned indictments against Rosa for first degree murder, kidnaping, and aggravated rape. Rosa's first trial ended in a mistrial when the jury failed to reach a unanimous verdict. On November 25, 1986, following a second trial, a jury convicted Rosa of all charges. The Massachusetts Supreme Judicial Court ("SJC") reversed the

convictions on March 9, 1992.  Commonwealth v. Rosa, 412 Mass. 147 (Mass. 1992).[1]  On March 4, 1993, following a third trial, a jury found Rosa guilty of murder and kidnaping, and not guilty of aggravated rape.  Rosa was sentenced to life imprisonment on the murder conviction and to a concurrent sentence of nine to ten years on the kidnaping conviction.  The SJC affirmed the convictions on February 9, 1996.  Commonwealth v. Rosa, 422 Mass. 18 (Mass. 1996).

Rosa then filed pro se post-conviction motions in the trial court, including a motion to dismiss, a motion for release from unlawful restraint and a motion for new trial.  The court never acted on the pro se motions.  On April 18, 2002, appointed counsel filed an amended motion for new trial.  On February 3, 2003, after receiving Rosa's supplemental memorandum, Judge Spurlock affirmed his rulings.  The trial court did not hold a hearing as to Rosa's claims.

On February 25, 2003, Rosa filed a petition for leave to appeal the denial of his amended motion for a new trial with the Single Justice of the SJC, pursuant to M.G.L. c. 278 § 33E.  A hearing was held on June 11, 2003.  On October 17, 2003, the

---

[1] The SJC reversed Rosa's convictions for reasons unrelated to the claims raised in the instant petition.  Namely, the SJC found reversible error where the prosecutor's summation improperly made substantive use of hearsay testimony that had been admitted solely to impeach the defendant's wife's credibility after the prosecutor had introduced a transcript of the wife's testimony in Rosa's first trial.  See Commonwealth v. Rosa, 412 Mass. 147 (Mass. 1992).

Single Justice denied the petition in an unpublished decision. See Memorandum of Decision and Order Denying Petition for Leave to Appeal, October 17, 2003, in Respondent's Supplemental Answer, filed July 15, 2004.

### B. Federal Court

On January 26, 2004, Rosa filed the instant federal habeas petition pursuant to 28 U.S.C. § 2254. On February 24, 2004, respondent filed a motion to dismiss the petition as time barred under 28 U.S.C. § 2241(d)(1). This Court denied the motion to dismiss on June 11, 2004. On November 2, 2004, the Court heard arguments as to the merits of Rosa's habeas claims. Rosa's petition is now ripe for review on its merits.

## II. DISCUSSION

### A. Standard of Review

The Antiterrorism and Effective Death Penalty Act ("AEDPA"), enacted in 1996, amended 28 U.S.C. § 2254 by substantially restricting the power of the federal courts to grant writs of habeas corpus to state prisoners. Post-AEDPA, § 2254(d) provides that a federal court may only issue a writ of habeas corpus if it determines that the state court proceedings: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Supreme Court precedent; or (2) resulted in a decision that was based on an

unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

In Williams v. Taylor, 529 U.S. 362 (2000), the Supreme Court elaborated on the "contrary to" and "unreasonable application" clauses of § 2254(d)(1). It determined that a state court decision is "contrary to" clearly established precedent if the state court either (1) applies a rule that contradicts the governing law set forth in Supreme Court cases; or (2) confronts a set of facts that are materially indistinguishable from those in a Supreme Court decision and nevertheless arrives at a different result. Williams, 529 U.S. at 405-06; see also Hurtado v. Tucker, 245 F.3d 7, 15 (1st Cir. 2001).

"Under the 'unreasonable application' clause, a federal court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at 413. Unreasonableness is measured using an objective standard; an erroneous or incorrect application of law is not necessarily an unreasonable application. Id. at 411; see also McCambridge v. Hall, 303 F.3d 24 (1st Cir. 2002).

The First Circuit recently described the question of unreasonableness as involving "'some increment of incorrectness beyond error'... The increment need not necessarily be great, but

it must be great enough to make the decision unreasonable in the independent and objective judgment of the federal court." McCambridge, 303 F.3d at 36, quoting Francis v. Stone, 221 F.3d 100, 111 (2d Cir. 2000).  In effect, it is not enough for the state court to have been wrong; it must have been very wrong.

Findings of fact are subject to even greater deference. Section 2254 provides that "a determination of a factual issue made by a state court shall be presumed to be correct.  The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1).  The First Circuit characterized this as a particularly "high hurdle."  Mastracchio v. Vose, 274 F.3d 590, 598 (1st Cir. 2001).

**B. Rosa's Claims for Relief**

Rosa raises two grounds for relief:[2]

(1) Post-conviction DNA testing that eliminated the victim as the source of a stain found on Rosa's coat amounts to newly discovered evidence warranting a new trial, particularly because the stain was the only piece of physical evidence introduced at trial;

---

[2] In his initial state post-conviction appeals, Rosa challenged his conviction on three other grounds: (1) the trial judge improperly precluded him from presenting evidence of a "look-alike:" (2) the trial judge gave an instructional error that tainted the jury's notion of the burden of proof, creating the possibility that the jury would convict on a lowered standard of proof; and (3) the trial judge's jury instruction defining extreme atrocity or cruelty impermissibly allowed the jury to consider external factors in evaluating the first-degree murder charge.  See Commonwealth v. Rosa, 422 Mass. 18 (Mass. 1996).  These claims were defaulted in Rosa's subsequent appeal to the Single Justice of the SJC, and they were not raised in his present habeas petition.

    (2)    The Commonwealth failed to preserve crucial evidence, namely the victim's pants and sweater, in violation of Rosa's rights to a fair trial and due process.

With regard to the second claim, Rosa further argues that if the pants and sweater, which were reportedly stained with blood, were available for DNA testing today, the results would exonerate him. Taken together, Rosa's claims amount to an "actual innocence" defense. Indeed, his briefs say as much: "Petitioner has established 'actual innocence.'" For the reasons set forth below, neither of Rosa's explicit grounds for relief, nor his claim of actual innocence, warrant the granting of writ of habeas corpus by this Court.

    **C.**    **Newly Discovered Evidence: The Lapel Stain**

        **1.**    **Relevant SJC Findings of Fact**

The SJC found the following facts with respect to the stain found on Rosa's jacket, as stated in <u>Commonwealth v. Rosa</u>, 422 Mass. 18 (Mass. 1996), and <u>Commonwealth v. Rosa</u>, Memorandum of Decision and Order Denying Petition for Leave to Appeal, Supreme Judicial Court for Suffolk County, No. SJ-2003-0087, October 17, 2003:

At trial, the Commonwealth presented evidence that a small stain found on the lapel of a brown coat found at Rosa's apartment was consistent with the victim's blood type. That the coat belonged to Rosa was not in dispute. Some but not all eyewitnesses described the perpetrator as wearing a brown coat at

the time he was seen abducting the victim, and they confirmed that the coat found at Rosa's apartment was the coat worn by the perpetrator.[3]

At trial, Rosa presented ample evidence that minimized, if not eliminated entirely, the inculpatory value of the stain. He told the jury that the victim's blood group was common, comprising forty percent of the population; that two of Rosa's brothers, who either frequented or resided in his apartment, had the same blood type as the victim; that the stain on Rosa's coat, which was not blood, could have been caused by someone merely coughing or sneezing in the vicinity of the coat; and that the Commonwealth's strongest identification witness testified that the perpetrator was not wearing a brown coat when she walked directly past the perpetrator and the victim as he was leading the victim away.

DNA testing, which was not available at the time of Rosa's trial, now confirms that the victim was not the source of the stain on Rosa's brown coat. On this basis, Rosa argues that the Commonwealth's case against him has been so undermined by the elimination of the stain that he is entitled to a new trial.

---

[3] The coat was not introduced into evidence at Rosa's third trial. Sometime after the second trial, the coat was lost, as was the victim's pants and sweater, as discussed supra. Evidence regarding the identification of the coat was given by having the witnesses testify to having identified the coat at a prior hearing.

After reviewing this claim on post-conviction review, the Single Justice of the SJC found that "the Commonwealth's evidence concerning the stain was of marginal – if any – significance." <u>Commonwealth v. Rosa</u>, Memorandum of Decision and Order Denying Petition for Leave to Appeal, at p. 3.  The court further concluded that the defense mounted a "successful attack on that evidence" at trial, leading the prosecution to virtually ignore the lapel stain during its closing arguments.  Instead, closing arguments focused almost exclusively on the strength of two interlocking eyewitness identifications.  One witness, the victim's roommate, stood within several feet of the perpetrator as he held the victim at knife-point in the doorway of the victim's apartment building before carrying her away, and she identified Rosa as the man she saw.  A second eyewitness, who also identified Rosa as the perpetrator, reported having seen Rosa several times in the apartment building where both Rosa and the eyewitness's cousin lived.

### 2.   **AEDPA & The Standard for Granting a New Trial Based on Newly Discovered Evidence**

If Rosa could not and did not discover the exculpating DNA results until after he had already exhausted his state appeals, his newly discovered evidence claim would be governed by the Supreme Court's decisions in <u>Townsend v. Sain</u>, 372 U.S. 293 (1963), and <u>Herrera v. Collins</u>, 506 U.S. 390 (1993).  In <u>Townsend</u> and <u>Herrera</u>, the Court found that a claim of actual innocence

based on newly discovered evidence cannot be a ground for federal habeas relief unless the petitioner presents an independent constitutional defect in his conviction. In addition, the Court suggested that there may be situations where no such defect is present but the petitioner makes a "truly persuasive" showing of actual innocence. Herrera, 506 U.S. at 400, 417.

Since Rosa discovered the DNA results before exhausting his state appeals, and was otherwise able to argue the impact of those results before the SJC, the DNA evidence is not "newly discovered" under the standards governing federal habeas review. See, e.g., Stephens v. Kemp, 469 U.S. 1043, 1051 (1984) ("'Newly discovered evidence' has a well-settled meaning: it is 'evidence which could not reasonably have been presented' by the petitioner in the earlier proceeding," quoting Townsend, 372 U.S. at 317). Thus, this Court's assessment of the impact of the DNA results on Rosa's conviction is governed by AEDPA's "unreasonable [legal] application" and "unreasonable [factual] determination" guideposts, 28 U.S.C. § 2254(d), and not by Townsend's newly discovered evidence standard.[4]

---

[4] Respondent argues that the Single Justice of the SJC – the gatekeeper – relied on a state procedural bar in denying Rosa's petition for leave to appeal from the denial of his motion for a new trial. As such, respondent argues, the decision is a "classic example of an independent and adequate state ground," Simpson v. Matesanz, 175 F.3d 200, 207 (1st Cir. 1999), that cannot be disturbed by a federal court on habeas review. See Coleman v. Thompson, 501 U.S. 722, 750 (1991) (where petitioner defaulted his federal claims in state court "pursuant to an independent and adequate state procedural rule, federal habeas review of the claim is barred").

The conclusion urged by respondent is plainly wrong. In reviewing Rosa's newly discovered evidence claim, the SJC reached the merits of the

Under AEDPA, this Court cannot disturb the SJC's affirmance of Rosa's conviction on the ground that "the Commonwealth's evidence concerning the stain was of marginal – if any – significance," Commonwealth v. Rosa, Memorandum of Decision and Order Denying Petition for Leave to Appeal, at p. 3, unless the factual predicate for that determination was unreasonable in light of the evidence presented, or the determination involved a departure from or unreasonable application of federal law.  28 U.S.C. § 2254(d).  Accordingly, two questions are in order: First, was the SJC's determination that the coat was of "marginal utility" a legal or factual finding?  Second, if it was a factual finding, has Rosa contradicted that finding by clear and convincing evidence?  Or if it was a legal finding, was it reasonable in light of well-settled Supreme Court precedent?

### 3.    The Nature of The SJC's "Marginal Utility" Finding

In reaching its conclusion that the stain found on Rosa's brown coat was of only "marginal utility" to the prosecution at Rosa's trial, the Single Justice, first, laid out the elements of the government's case against Rosa, then it reviewed trial transcripts to determine how much weight the government placed on

---

claim, as evidenced by its careful review of the trial record and its application of the relevant Massachusetts law, which resembles federal law regarding the implications of newly discovered evidence.  A federal court can presume that the state court decision was not based on independent state grounds where, as here, the decision "fairly appears... to be interwoven with federal law." Coleman, 501 U.S. at 735.  Thus, this Court is free to address the merits of Rosa's petition.

each element, and, finally, it evaluated to what degree the defense was able to offset the elements of the government's case. After going through these steps, the SJC reached its "marginal utility" conclusion.

The SJC then turned to the legal implications of the exonerating DNA evidence. To that end, it asked whether "the evidence would have been a real factor in the jury's deliberations, raising a substantial risk that the jury would have reached a different verdict if the newly discovered evidence had been presented to them," or, in this case, had the stain of "marginal utility" not been presented to them at all. Commonwealth v. Rosa, Memorandum of Decision and Order Denying Petition for Leave to Appeal, at p. 2, citing Commonwealth v. Horton, 434 Mass. 823, 837 (2001); Commonwealth v. Moore, 408 Mass. 117, 126-127 (1990); Commonwealth v. Grace, 397 Mass. 303, 305-306 (1986).

Like a court's finding of the presence or absence of purposeful discrimination in the context of a Batson claim, see, e.g., Miller-El v. Cockrell, 123 S.Ct. 1029, 1041 (2003) (state court's credibility determination pursuant to a Batson claim was a factual finding for the purposes of § 2254), the SJC's "marginal utility" determination was a finding of fact gleaned from the totality of facts from Rosa's trial. Once that factual determination was made, the court applied it to Massachusetts law

regarding newly discovered evidence. In so doing, they determined that, in light of the stain's minimal usefulness for the prosecution, the newly discovered DNA results "failed to establish any substantial risk that this evidence would have made a difference in the outcome of the case." Commonwealth v. Rosa, Memorandum of Decision and Order Denying Petition for Leave to Appeal, at p. 6.

### 4. The Reasonableness Of The SJC's "Marginal Utility" Determination

To secure habeas relief, Rosa must demonstrate by clear and convincing evidence that the SJC's findings were unreasonable – that the stain was of marginal utility, and that new evidence showing that it did not match the victim would not have been a real factor in the jury's deliberations. 28 U.S.C. § 2254(d)(2); see also Miller-El, 123 S.Ct. at 1036. This he cannot do.

First, I agree with the SJC that at trial Rosa mounted a persuasive attach on the link between the stain and the crime: Rosa showed that the stain was consistent with the blood group of nearly half the population, that the stain matched the blood group of two of Rosa's brothers, that the stain could have arrived on the coat by mere sneezing or coughing in its vicinity, that there was no way to tell how old the stain was, and, finally, that the government's strongest identification witness testified that the perpetrator was not wearing a brown coat. See

Commonwealth v. Rosa, Memorandum of Decision and Order Denying Petition for Leave to Appeal, at p. 3.

Second, I agree that the utility of the evidence was more than offset by the strength of the witness identifications of Rosa:  One witness, the victim's roommate, stood within feet of the victim and her attacker on the night of the murder.  The other key eyewitness was a neighbor who knew both the victim and Rosa.  At trial, she testified to walking past the victim and her attacker, coming within a few feet, on the night of the abduction and murder.  She also testified that the victim looked "frightened."  In the ensuing days, she contacted the police to tell them that she knew the person who had been with the victim – Rosa – and that she knew where he lived.

In light of corroborating testimony from two eyewitness, it was reasonable for the SJC to conclude that "independent corroborating identification, from a source that knew the defendant, surely meant a great deal more [to the jury] than the dubious evidence about the blood grouping of a stain." Commonwealth v. Rosa, Memorandum of Decision and Order Denying Petition for Leave to Appeal, at p. 4.

As further evidence that the stain was of marginal significance, the SJC noted that the prosecutor barely discussed it during closing arguments.  Indeed, the prosecutor's closing argument focused almost exclusively on the strength of the

corroborating eyewitness identifications, and devoted only a single sentence to the lapel stain. In light of the closing arguments, coupled with Rosa's powerful attack on the stain evidence, the SJC reasonably concluded that "the prosecution's case did not rest on the forensic evidence of the stain." Commonwealth v. Rosa, Memorandum of Decision and Order Denying Petition for Leave to Appeal, at pp. 5-6.

Because Rosa has failed to persuade this Court by clear and convincing evidence, as required by § 2254(e)(1), that the SJC's findings were objectively unreasonable, his claim for habeas relief on the ground of newly discovered evidence fails.

   D.   **Lost Evidence: The Victim's Sweater and Pants**

Rosa claims that the Commonwealth's loss of the victim's clothing prior to his third and final trial amounts to a violation of his due process rights under Brady v. Maryland, 373 U.S. 83 (1963), California v. Trombetta, 467 U.S. 479 (1984), and Arizona v. Youngblood, 488 U.S. 51 (1988). In reviewing this claim, the Single Justice of the SJC found that a new trial was not justified because Rosa had failed to test the clothing "in all the years that the clothing had been available to him" before it was lost,[5] and because it is merely speculative that the blood on the clothing would have produced exculpatory DNA tests. See

---

[5] There is no record of the clothing's whereabouts after October 1988, five years before Rosa was finally convicted following a third trial.

Commonwealth v. Rosa, Memorandum of Decision and Order Denying Petition for Leave to Appeal, at p. 7.  Indeed, it is highly likely that the blood on the clothing came from the victim.

Supreme Court precedent governing loss of evidence or failure to preserve claims is well-settled: The failure to preserve only rises to the level of constitutional error where the lost evidence was material such that it was apparently exculpatory before it was lost and of such a nature that the defendant was unable to obtain comparable evidence by other reasonably available means.  California v. Trombetta, 467 U.S. at 488-89.  Where, as here, the lost evidence is clearly material and irreplaceable, but only potentially exculpatory rather than clearly exculpatory, Rosa must show bad faith on the part of the prosecution.  Arizona v. Youngblood, 488 U.S. at 57.  While there are critics of Trombetta and Youngblood, and while those criticisms have particular resonance in cases involving DNA testing, this is not the case to address those issues.

Rosa cannot make a threshold showing of actual innocence.  While other physical evidence lends circumstantial support to his actual innocence claim (i.e. the lapel stain), Rosa has not presented any evidence that the blood on the lost clothing would definitely exculpate him.  Further, Rosa has not presented any evidence of bad faith on the part of the government, nothing to suggests that at the time the evidence was lost, for example, the

government knew that it was potentially exculpatory.[6]  Indeed, just the opposite.  Rosa had made no attempt to test the evidence prior to any of his trials.  It was reasonable to believe that law enforcement believed, just as Rosa did, that the evidence had no exculpatory value.  Thus, the SJC's rejection of Rosa's lost evidence claim was not an unreasonable application of Trombetta or Youngblood.

Under the circumstances it was entirely appropriate for the SJC to conclude that "[m]ere speculation that the blood stains on the missing clothing would, if tested, produce exculpatory evidence does not provide a basis for a new trial." Commonwealth v. Rosa, Memorandum of Decision and Order Denying Petition for Leave to Appeal, at p. 7.

### III. CONCLUSION

For the foregoing reasons, Rosa's petition for habeas corpus relief [document #1] is hereby **DENIED** and this case is **DISMISSED**.

**SO ORDERED.**

**Date: October 17, 2005**          **/s/NANCY GERTNER, U.S.D.J.**

---

[6] See Elizabeth A. Bawden, Here Today, Gone Tomorrow: Three Common Mistakes Courts Make When Police Lose or Destroy Evidence With Apparent Exculpatory Value, 48 Clev. St. L. Rev. 335, 349 (2000).